## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff | ) | CIVIL ACTION NO. 07-1508 (JDB) |
| v. | ) ) | |
| LENA CONTRACTING, INC., *et al* | ) ) | |
| Defendants | ) | |

## MOTION FOR ENTRY OF JUDGMENT BY DEFAULT

Plaintiff, International Painters and Allied Trades Industry Pension Fund, respectfully moves this Court for entry of judgment by default against Defendants, Lena Contracting, Inc., 202 Industrial Loop, Staten Island, NY  10309 ("Lena NY") and Lena Contracting, Inc., 774 Pfeiffer Blvd., Perth Amboy, NJ  08861 ("Lena NJ" and together with Lena NY, "Defendants"), jointly and severally, in the amount of $38,573.40 and for a declaration that Lena NY is the alter ego of Lena NJ.  On November 7, 2007, Plaintiff filed with the Clerk of the Court a Request to Enter Default against Defendants pursuant to Federal Rule of Civil Procedure 55(a). Default was subsequently entered on November 8, 2007.

Accompanying this motion are a supporting memorandum of points and authorities, the Declaration of Thomas C. Montemore (attached as Exhibit 1), the Declaration of Philip A.

**[GOTO NEXT PAGE]**

191277-1

Lozano (attached as Exhibit 2), and a proposed default judgment.

Respectfully submitted,

JENNINGS SIGMOND, P.C.

BY: /s/ Kent G. Cprek
KENT G. CPREK, ESQUIRE
(I.D. NO. 478231)
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0611

Date:  December 12, 2007                Attorney for Plaintiff


OF COUNSEL:

PHILLIP A. LOZANO, ESQUIRE
Jennings Sigmond, P.C.
510 Walnut Street, Suite 1600
Philadelphia, PA 19106
(215) 351-0669

191277-1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff | ) | CIVIL ACTION NO. 07-1508 (JDB) |
| v. | ) ) | |
| LENA CONTRACTING, INC., *et al* | ) ) | |
| Defendants | ) | |

### DEFAULT JUDGMENT

Upon consideration of the Complaint and Motion for Entry of Judgment by Default of the Plaintiff, International Painters and Allied Trades Industry Pension Fund ("Fund," "Pension Fund" or "Plaintiff"), it appears to the Court that Defendants, Lena Contracting, Inc., 202 Industrial Loop, Staten Island, NY 10309 ("Lena NY") and Lena Contracting, Inc., 774 Pfeiffer Blvd., Perth Amboy, NJ 08861 ("Lena NJ" and together with Lena NY, "Defendants"), have willfully failed to appear, plead or otherwise defend, and it is:

1.  DECLARED that Lena Contracting, Inc., 774 Pfeiffer Blvd., Perth Amboy, NJ 08861 is the alter ego of Lena Contracting, Inc., 202 Industrial Loop, Staten Island, NY 10309.

2.  ORDERED that Plaintiff's Motion is **GRANTED;**

3.  ORDERED that default judgment is entered against Defendants, jointly and severally, and in favor of Plaintiff in the total amount of $38,573.40 itemized as follows:

(a)  Unpaid contributions for the period of February 2007 through October 2007 in the amount of $26,602.77 under 29 U.S.C. § 1132(g)(2);

(b)  Interest from the date contributions became due through December 15, 2007 in the amount of $892.87;

191277-1

(c)     Liquidated damages in the amount of $5,320.56. As indicated above, Defendant owes $26,602.77 in unpaid contributions. Defendant owes twenty percent (20%) in liquidated damages for unpaid contributions in the amount of $5,320.56. The total amount of liquidated damages is greater than the interest due. Therefore, Defendant owes liquidated damages in the amount of $5,320.56.

(d)     Attorneys' fees and costs in the amount of $5,757.20 incurred by Plaintiff through December 11, 2007, as provided in 29 U.S.C. § 1132(g)(2)(D).

4.     ORDERED that Defendant, its owners, officers, agents, servants, attorneys and all persons acting on their behalf or in conjunction with them shall be and hereby are restrained and enjoined from refusing to file complete, proper and timely remittance reports with accompanying pension contributions for all periods for which Defendants are obligated to do so under its collective bargaining agreement(s).

5.     ORDERED that if further action by the Pension Fund is required to obtain payment of the amounts owed by Defendants, it may apply to this Court or to the court in which enforcement is sought, for such further reasonable attorneys' fees and costs in addition to those set out in Paragraph 2(d) above. See, Trucking Employees of North Jersey Welfare Fund, Inc. v. Bellezza Co., 57 Fed. Appx. 972 (3d Cir. 2003); International Painters and Allied Trades Industry Pension Fund v. H.W. Ellis Painting Co., Inc., No. 03-1125, slip. op. at *3 (D.D.C. February 10, 2004) (citing Free v. Briody, 793 F.2d 807 (7th Cir. 1986); Sheet Metal Workers Health and Welfare Trust Fund v. Big D Service Co., 867 F.2d 852 (10th Cir. 1989)).

6.     ORDERED that within ten (10) days of the entry of this Order, Defendants shall fully and accurately complete and submit to the Plaintiff any and all outstanding remittance reports, including but not limited to reports and contributions for the periods of February 2007

191277-1

through October 2007, together with a check for the full amount of the contributions and dues due, including interest and liquidated damages.

7.    ORDERED that Within twenty (20) days of a request by Plaintiff or its counsel, Defendants shall make available to the designated representative of the Plaintiff all payroll books and related records necessary for Plaintiff to ascertain the precise amount of any delinquent contributions due and owing to Plaintiff for all periods in which Defendants are obligated to make fringe benefit contributions to the Plaintiff and Defendants shall bear the costs of said audit.

8.    ORDERED that Plaintiff shall have the right to conduct future audits for all relevant periods, including the time periods covered by this judgment. Defendants shall be and hereby are restrained and enjoined from failing and refusing to submit to such audits by certified public accountants selected by Plaintiff and shall produce all payroll books and related records requested by Plaintiff, including, but not limited to, payroll, wages, general ledger and cash disbursement records, compensation insurance audits and any other pertinent records deemed necessary for the purpose of ascertaining and/or verifying payments and/or liabilities to Plaintiff. Defendants shall pay Plaintiff any additional amounts found owing, plus such other amounts as set forth in the Agreement, the Agreement and Declaration of Trust of the Pension Fund, the International Painters and Allied Trades Industry Pension Plan, ERISA or any other applicable law.

9.    ORDERED that if additional delinquencies are discovered pursuant to the submission of the remittance reports or to the audit referred to above, or as a result of additional information that becomes available to the Plaintiff, the Plaintiff may apply to the Court for an additional or supplemental judgment reflecting any additional delinquencies, interest, liquidated

191277-1

damages, attorneys' fees and costs, pursuant to ERISA, 29 U.S.C. § 1132(g)(2) together with any

audit costs incurred by the Plaintiff.

       10.    ORDERED that Plaintiff is awarded reimbursement of all additional attorneys'

fees and costs it incurs in the collection and enforcement of this judgment as well as those

incurred in the collection of delinquent contributions which may be found to be due as a result of

the audit provided for in this Order.

       11.    ORDERED that if Defendants fail to comply with any of the terms of this Order,

the Plaintiff may, in addition to pursuing the remedies provided for under Federal Rule of Civil

Procedure 69, reopen this case upon motion to the Court and notice to the Defendants, and may

at that time ask for further appropriate monetary and/or injunctive relief.


                                                 _____

                                               JOHN D. BATES          J.

                                               United States District Judge

Date:_____

Copies of this Default Judgment shall be sent to:

Kent G. Cprek, Esquire
Philip A. Lozano, Esquire
Jennings Sigmond, P.C.
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683

LENA CONTRACTING, INC.
202 Industrial Loop
Staten Island, NY  10309

LENA CONTRACTING, INC.
774 Pfeiffer Blvd.
Perth Amboy, NJ  08861

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff | ) | CIVIL ACTION NO. 07-1508 (JDB) |
| v. | ) ) | |
| LENA CONTRACTING, INC., *et al* | ) ) ) | |
| Defendants | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN
## SUPPORT OF MOTION FOR ENTRY OF JUDGMENT BY DEFAULT

Plaintiff, International Painters and Allied Trades Industry Pension Fund (the "Pension Fund"), is entitled to an Order entering judgment by default against Defendants, Lena Contracting, Inc., 202 Industrial Loop, Staten Island, NY 10309 ("Lena NY") and Lena Contracting, Inc., 774 Pfeiffer Blvd., Perth Amboy, NJ 08861 ("Lena NJ" and together with Lena NY, "Defendants"), jointly and severally, in the amount of $38,573.40 and a declaration that Lena NY and Lena NJ are alter egos.

The Pension Fund served its Complaint on Defendants on September 13, 2007. To date, Defendants have failed to answer the Complaint or to otherwise defend this action. Plaintiff filed a Request to Clerk to Enter Default against the Defendants pursuant to Fed. R. Civ. P. 55(a) on November 7, 2007. Default was entered against the Defendants on November 8, 2007. Plaintiff now submits its motion for entry of judgment by default.

In light of Defendants' default and Defendants' continuing failure to appear or otherwise defend, the Pension Fund is entitled to judgment by default against Defendants without a hearing. Fed. R. Civ. P. 55(b); United States v. De Frantz, 708 F. 2d 310 (7th Cir. 1983);

Draisner v. Liss Realty, 211 F. 2d 808 (1954). Moreover, where defendants, as here, fail to respond to the Complaint, all factual allegations in the Complaint are deemed admitted. Thomson v. Wooster, 114 U.S. 104 (1885); Au Bon Pain Corp. v. Artect, Inc., 653 F 2d 61 (2d Cir. 1981); U.S. ex. Rel. v. Carr, 567 F. Supp. 831, 840 (W.D. MI 1983). General allegations of fact are also deemed true. Danning v. Lavin, 572 F. 2d 1386, 1388-89 (9th Cir. 1978) (allegations of insolvency pled in general terms held sufficient to support a finding of fraudulent conveyance or voidable preference).

Defendants are and have been party to collective bargaining agreements (singly or jointly "Labor Contract") with the various local unions and district councils affiliated with the International Union of Painters and Allied Trades, AFL-CIO-CFC ("International" or "Union"), including District Council No. 711 ("DC 711"). Under the Labor Contract, Defendants are required to remit fringe benefit contributions and other sums to Plaintiff. See, Exhibit 1, Montemore Declaration, ¶¶ 5, 6. The failure to pay these fringe benefit contributions and other amounts results in a delinquency to the Plaintiff. Id.

## ARGUMENT

A.  **ENTRY OF JUDGMENT AGAINST S FOR UNPAID CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES AND ATTORNEYS' FEES AND COSTS IS APPROPRIATE**

1.  **Defendants are Bound by the Terms and Conditions of a Collective Bargaining Agreement with the Union.**

Company is a party to a Labor Contract with the Union. See, Exhibit 1, Montemore Declaration, ¶ 5. Under the terms of the Labor Contract, the employer agrees to be bound by the Agreement and Declaration of Trust of the Pension Fund ("Trust Agreement", attached as Exhibit 1 to the Complaint filed in this matter and incorporated by reference)and the International Painters and Allied Trades Industry Pension Plan ("Plan") (attached as Exhibit 2 to

the Complaint filed in this matter and incorporated by reference) and by all amendments thereto

and actions taken by the trustees of the Pension Fund. See, Complaint, ¶¶ 7-8; Exhibit 1,

Montemore Declaration, ¶¶ 5, 6. The Labor Contract provides for the payment of contributions

to the Pension Fund for time worked by or paid to employees who perform work covered by its

terms and conditions. See, Exhibit 1, Montemore Declaration, ¶ 6. Failure to make these

contributions, or to submit either incorrect or late remittance reports, results in a delinquency to

the Pension Fund. Id. Under the Trust Agreement, The Pension Fund has the right to audit the

signatory's payroll books and related records to determine that all of the required contributions

have been paid. See, Trust Agreement, Art. VI, Sec. 6.

Furthermore, Section 515 of the Employee Retirement Income Security Act ("ERISA"),

29 U.S.C. § 1145, provides:

> Every Employer who is obligated to make contributions to a
> bargained agreement shall ... make contributions in accordance
> with ... such agreement.

If an employer fails to make the contributions as required by the collective bargaining

agreement and Section 515 of ERISA, then the employer is subject to the provisions of Section

502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2). Section 502(g)(2) provides for the mandatory

award of the following if a judgment is entered in the Pension Fund's favor pursuant to Section

515:                        A.      the unpaid contributions;

                            B.      interest on the unpaid contributions;[1]

                            C.      an amount equal to the greater of:

                                    (i)      interest on the unpaid contributions; or

---

[1]         Section 10.12(b)(2) of the Plan sets the interest rate on delinquent contributions according to the
Internal Revenue Service rate for delinquent taxes. *See*, Complaint, Exhibit 2.

(ii)     liquidated damages provided for under the plan in an
amount not in excess of 20 percent (or such higher
percentage as may be permitted under Federal or State law)
of the amount determined by the Court under subparagraph
(a);[2]

D.     reasonable attorneys' fees and costs of the action, to be paid by the
defendant; and

E.     such other legal or equitable relief as the court deems appropriate.

As stated above, Defendants have failed to submit contributions for the period of

February 2007 through October 2007. See, Exhibit 1, Montemore Declaration, ¶ 7. As a result,

Plaintiff is entitled to judgment in at least the amount of $38,573.40.

### a. Defendants owe unpaid benefit contributions in the amount of $26,602.77.

Based upon information currently available to the Pension Fund, Defendants owe

contributions for the period February 2007 through the first two weeks of March 2007 in the

amount of $5,534.69. Defendants also owe estimated contributions for the period including the

final two weeks of March 2007 to October 2007 in at least the sum of $21,068.08. The estimated

contributions are calculated by the Pension Fund based on the average of the last three months of

remittance reports filed by Company. The contributions are estimated because Company failed

to submit the required remittance report for that period. The total for unpaid and estimated

contributions is $26,602.77. Montemore Declaration, ¶ 7.

### b. Defendants owe interest through December 15, 2007 in the amount of $892.87.

Section 10 of the International Painters and Allied Trades Industry Pension Plan ("Plan")

(attached as Exhibit 2 to the Complaint filed in this matter and incorporated by reference) sets

---

[2]     ERISA and § 10.12(b)(3) of the Plan's rules and regulations mandate that liquidated damages be
awarded in an amount equal to the greater of interest or 20% of unpaid contributions due at the commencement of
the lawsuit and those which become delinquent during the course of the litigation. See, Complaint, Exhibit 2. Article

the interest rate on delinquent contributions according to the Internal Revenue Service rate for delinquent taxes. Interest accruing through December 15, 2007 on Defendants' delinquent contributions totals $892.87. Interest shall continue to accrue on unpaid contributions in accordance with the Plan and ERISA until the date of actual payment. Montemore Declaration, ¶ 8; 29 U.S.C. § 1132(g)(2); 26 U.S.C. § 6621.

### c.    Defendants owe liquidated damages in the amount of $5,320.56.

ERISA and § 10.12(b)(3) of the Plan's rules and regulations mandate that liquidated damages be awarded in an amount equal to the greater of interest or 20% of unpaid contributions due at the commencement of the lawsuit and those which become delinquent during the course of the litigation. Article VI, Sec. 4 of the Pension Fund's Trust Agreement (attached as Exhibit 1 to the Complaint filed in this matter and incorporated by reference) also provides for the assessment of liquidated damages on contributions paid after the due date. As indicated above, Defendants owe $26,602.77 in unpaid contributions. Twenty percent (20%) of this amount is $5,320.56. The total amount of liquidated damages is greater than the interest due. Therefore, Defendants owe liquidated damages in the amount of $5,320.56. Montemore Declaration, ¶ 9; 29 U.S.C. § 1132(g)(2)(C).

### d.    Defendants owe attorneys' fees and costs in the amount of $5,757.20.

Plaintiff has incurred $5,757.20 in attorneys' fees and costs in connection with this matter through December 15, 2007. See, Exhibit 2, Lozano Declaration, ¶ 2; Exhibit 3. See, 29 U.S.C. § 1132(g)(2). The Pension Fund is entitled to reimbursement of all attorneys' fees and costs it incurs in connection with the enforcement and collection of any judgment entered by the Court. See, Trucking Employees of North Jersey Welfare Fund, Inc. v. Bellezza Co., 57 Fed. Appx. 972

---

VI, Sec. 4 of the Trust Agreement also provides for the assessment of liquidated damages on contributions paid after

191277-1

(3d Cir. 2003); <u>Free v. Briody</u>, 793 F.2d 807 (7th Cir. 1986); <u>Sheet Metal Workers Health and Welfare Trust Fund v. Big D Service Co.</u>, 867 F.2d 852 (10th Cir. 1989).

### 2.    Lena NJ and Lena NY are alter egos and are jointly and severally liable for the debt to the Pension Fund

The factors to be considered in determining whether one employer is the alter ego of another are: substantial identity of management, business purpose, operation, equipment, customers, supervision and ownership. <u>Fugazy Continental Corporation v. N.L.R.B.</u>, 725 F.2d 1416, 1419 (DC Cir. 1984). See also <u>Stardyne Inc. v. N.L.R.B.</u>, 41 F.3d 141, 146, 151 (3d Cir. 1994). An alter ego finding may result even though all factors are not present and no one combination of factors is more controlling than any other combination. <u>Stardyne</u>, 41 F.3d at 146. The Pension Fund alleged the following (See Complaint, ¶12):

(1)    The officers and management of Lena NY and Lena NY are substantially the same. They are Michael Realmuto, Renee Realmuto and Anthony Campanella.

(2)    Lena NJ and Lena NY have different mailing addresses; however they operate from the same location at 202 Industrial Loop, Staten Island, NY 10309.

(3)    Lena NJ is engaged in the same or essentially the same business as Lena NY, serving the same or similar type of customers. Both are engaged in highway and street construction.

(4)    Employees of Lena NY work for Lena NJ using the same equipment and serving the same or similar type customers.

(5)    Owners and management of Lena NY and Lena NJ were aware of and had full knowledge of the unpaid obligation to the Pension Fund.

---

the due date. <u>See</u>, Complaint, Exhibit 1.

These factual allegations are deemed admitted because Defendants failed to answer the Complaint. Thomson v. Wooster, supra; Au Bon Pain Corporation v. Artect, Inc., supra; U.S. Ex. v. Carr, supra; Danning v. Lavin, supra; See also Montemore Declaration at ¶5.

### 3.    The Pension Fund is entitled to injunctive relief

The failure of Defendants to comply with its contractual and statutory obligations results in a substantial adverse impact on the Pension Fund's ability to meet its legal obligations. Montemore Declaration, ¶ 11. The Pension Fund is obligated by the express mandates of ERISA and by the documents and instruments by which it is administered to provide benefits and pension credits to all of Company's employees who are otherwise eligible to receive them. Id; 29 C.F.R. 2530-200b-2(a)(1) and (2); Central States, S.E. & S.W. Areas Pension Fund v. Admiral Merchants Motor Freight, Inc., 511 F.Supp. 38 (D.Minn. 1980), aff'd sub. nom., Central States, S.E. & S.W. Areas Pension Fund v. Jack Cole-Dixie Highway Co., Inc., 642 F.2d 1122 (8th Cir. 1981). The Pension Fund is required to provide these benefits and credits regardless of whether the employer makes the contributions. Montemore Declaration, ¶ 10. For example, if employees perform work covered by the collective bargaining agreement, the Pension Fund has affirmative obligations to credit hours for retirement benefits regardless of whether a signatory employer makes contributions to the Pension Fund. The result of Defendants' non-compliance with ERISA and the Labor Contract is a significant drain on the Pension Fund's resources. Id.

Additionally, where, as here, Defendants fail to remit their contributions, the Pension Fund loses the income that it would have earned by investing those contributions. Id. This loss of investment income combined with the Pension Fund's requirement to continue paying benefits to Defendants' employees (as well as to the employees of other signatory contractors) affects the

actuarial soundness of the Pension Fund as well as deplete the resources available to pay current pension benefits.

Furthermore, the Pension Fund incurs additional administrative expenses as a result of Defendants' failure to pay its contributions. These losses and added expenses significantly impair the Pension Fund's ability to continue to provide benefits to not only Defendants' employees, but also to employees of companies that comply with their contractual obligations.

In light of Defendants' failure to comply with its contractual and statutory obligations to the Pension Fund to submit timely, accurate remittance reports and pension contributions each month, and the irreparable harm which Defendants' malfeasance causes the Pension Fund, the Pension Fund respectfully requests the injunctive relief which is set forth in its proposed default judgment. Laborers' Fringe Benefit Funds v. Northwest Concrete, 640 F.2d 1350, 1352 (6th Cir. 1981); IBPAT Union and Industry Pension Fund v. Hartline-Thomas, Inc. , 4 EBC 1199, 1200 (D.D.C. 1983); Teamsters Local 639 - Employers Trust v. Jones & Artis Construction Co., 640 F.Supp. 223 (D.D.C. 1986).

**B.    DEFENDANTS SHOULD BE ORDERED TO PRODUCE THE APPROPRIATE RECORDS TO ALLOW THE PENSION FUND TO AUDIT ITS PAYROLL BOOKS AND RELATED RECORDS AND MUST PAY ANY ADDITIONAL AMOUNTS FOUND TO BE DUE AND OWING**

The determination of an employee's eligibility for benefits is based upon information contained in the remittance reports, to be filed monthly by each and every signatory employer. Montemore Declaration, ¶¶ 6, 7, 10.  A proper determination of eligibility is not possible if remittance reports are not submitted or if they contain incorrect or incomplete information. See, 29 U.S.C. § 1132(g)(2)(E) (equitable relief); Teamsters Local 639 – Employers Trust v. Jones & Artis Construction Co., 640 F. Supp.223 (D.D.C. 1986); IBPAT Union and Industry Pension

Fund v. Hartline – Thomas, Inc., 4 EBC 1199, 1200 (D.D.C. 1983); Laborers' Fringe Benefit Pension Fund v. Northwest Concrete, 640 F. 2d 1350, 1352 (6th Cir. 1981).

In order to determine whether the contributing employer has made all required contributions and correctly reported hours worked and paid to its employees, the Pension Fund has the right to review all of the employer's records that relate to its contributory obligation. Central States, S.E. & S.W. Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 105 S.Ct. 2833 (1985). The employer has the obligation to maintain appropriate records and to permit the Pension Fund's auditors to review those records upon request. Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc., 30 F.3d 692, 695 (6th Cir. 1994).

In the present case, the Trust Agreement obligates Defendants to allow the audit. See Complaint, Exhibit 1, Art. VI, Sec. 6. The scope of records subject to review is broad, and include those records the auditors reasonably deem necessary to conduct an audit. DeMarco v. C & L Masonry, 891 F.2d 1236 (6th Cir. 1989); See also Exhibit 1, Montemore Declaration, ¶ 10. In addition to the routine payroll records (e.g., time cards, cancelled payroll checks, payroll ledgers and payroll tax returns), they can include the general check registers and cancelled checks, general disbursements ledgers and federal and state corporate income tax returns. Id.

An audit is necessary in this case in order to determine the exact amount due to the Pension Fund because of Defendants' failure to submit contractually-required remittance reports and furthermore, to ensure that the remittance reports submitted by Defendants are correct. See Exhibit 1, Montemore Declaration, at ¶¶ 10, 11. The Defendants' obligations under the Agreement and 29 U.S.C. § 1145 mean nothing if the Pension Fund cannot ensure compliance through an audit. The Court should order Defendants to produce their records for an audit for all periods in which the Defendants are obligated to make contributions to the Pension Fund so that

191277-1

a precise determination of the amount owed can be made. Upon completion of the audit, the

Court should enter a further judgment against Defendants for all additional amounts found to be

due and owing under the Agreement and ERISA.

## CONCLUSION

Plaintiff, thus, requests that the Court declare that Lena Contracting, Inc., 202 Industrial

Loop, Staten Island, NY  10309 ("Lena NY") is the alter ego of Lena Contracting, Inc., 774

Pfeiffer Blvd., Perth Amboy, NJ  08861 ("Lena NJ" and together with Lena NY, "Defendants"),

enter a judgment against Defendants, jointly and severally in the amount of $38,573.40 and, in

light of the clear statutory intent of ERISA, it is further requested that this Court grant the

Pension Fund all other relief to which it may be entitled under applicable law and as requested in

the Motion for Default Judgment.

Respectfully submitted,

JENNINGS SIGMOND, P.C.

BY: /s/ Kent G. Cprek
      KENT G. CPREK (BAR NO. 478231)
      The Penn Mutual Towers, 16th Floor
      510 Walnut Street, Independence Square
      Philadelphia, PA 19106-3683
      (215) 351-0611
      Counsel for Plaintiff

DATE: December 12, 2007

OF COUNSEL:
Philip A. Lozano, Esquire
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0669

191277-1

## CERTIFICATE OF SERVICE

I hereby certify this  day of December 12, 2007, that I caused to be served a copy of the foregoing Motion for Entry of Judgment by Default, Memorandum of Points and Authorities in Support thereof, Declaration of Thomas C. Montemore, Declaration of Philip A. Lozano and proposed Default Judgment by sending a copy of same via U.S. Mail, postage-prepaid to:

LENA CONTRACTING, INC.
202 Industrial Loop
Staten Island, NY  10309

LENA CONTRACTING, INC.
774 Pfeiffer Blvd.
Perth Amboy, NJ  08861

DATE: December 12, 2007

PHILIP A. LOZANO, ESQUIRE

191277_1.DOC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

INTERNATIONAL PAINTERS AND ALLIED )
TRADES INDUSTRY PENSION FUND )
                                    )
               Plaintiff       )       CIVIL ACTION NO. 07-1508 (JDB)
     v.                          )
                                      )
LENA CONTRACTING, INC., *et al* )
                                      )
            Defendants    )

### DECLARATION OF THOMAS MONTEMORE

THOMAS MONTEMORE states and declares the following:

1.     My name is Thomas C. Montemore and I am the Assistant to the Fund Administrator of the International Painters and Allied Trades Union and Industry Pension Fund ("Pension Fund", "Fund" or "Plaintiff"). I have held that position since February 1, 2000. I served as Delinquency Controller from 1988 through October 31, 2000 and I have served as the Delinquency Coordinator from 1986 to 1988, and before that, acted as Agreement Clerk from 1982 to 1986, and File Clerk beginning in 1979.

2.     The Pension Fund is an "employee benefit pension plan" as defined in Section 3(2)(A)(i) of ERISA, as amended, 29 U.S.C. §1002(A)(i), established by the International Union of Painters and Allied Trades, AFL-CIO-CFL ("Union"), and employers in private industry whose employees are members of or otherwise represented by the Union and its district councils and local unions, for the purpose of providing retirement income to the employees. The Pension Fund is administered in the District of Columbia from its and my principal place of business at 1750 New York Avenue, N.W., Washington, D.C. 20006.



3.     I have personal knowledge of the contents of the collective bargaining agreements, the Agreement and Declaration of Trust ("Trust Agreement") and the International Painters and Allied Trades Industry Pension Plan ("Plan") referenced in this Motion.

4.     The Pension Fund, as part of its normal operating procedure, maintain files containing copies of the collective bargaining agreements signed by each employer and copies of the remittance reports submitted by each contributing employer. The Pension Fund also maintains, as part of its normal operating procedures, a record of all contributions which are paid to the Pension Fund by each contributing employer, including copies of checks submitted directly from employers as payment for contributions due.

5.     My review of the regular business records maintained by the Pension Fund reveals that the Defendant, Lena Contracting, Inc., 202 Industrial Loop, Staten Island, NY  10309 ("Lena NY") is a New York corporation, a contributing employer of the Pension Fund and is bound to a collective bargaining agreement ("Labor Contract") with the International Union of Painters and Allied Trades, AFL-CIO, CLC.  Defendant Lena Contracting, Inc., 774 Pfeiffer Blvd., Perth Amboy, NJ  08861 ("Lena NJ" and together with Lena NY, "Defendants") is a New Jersey corporation.  Lena NY and Lena NJ are both engaged in highway and street construction. Michael Realmuto ("Realmuto") is the responsible for the management and operation of Lena NY and Lena NJ.   Realmuto has full knowledge of the Defendants' unpaid obligations to the Funds.

6.     The collective bargaining agreement requires Defendants' to submit monthly contributions to the Pension Fund on behalf of all employees in the bargaining unit, and sets forth the rate of contribution and the method for calculating the total amount of contributions due the Pension Fund. Contributions must be made for each hour for which employees receive pay at

the contribution rate specified in the agreements. Failure to make the required contributions, or to submit either incorrect or late remittance reports and contributions, results in a delinquency to the Pension Fund.

7.    Based upon information currently available to the Pension Fund, Defendants owe contributions for the period February 2007 through the first two weeks of March 2007 in the amount of $5,534.69. Defendants also owe estimated contributions for the period including the final two weeks of March 2007 to October 2007 in at least the sum of $21,068.08. The estimated contributions are calculated by the Pension Fund based on the average of the last three months of remittance reports filed by Company. The contributions are estimated because Company failed to submit the required remittance report for that period.

8.    Defendants owe interest through December 15, 2007 in the amount of $892.87 on the unpaid pension contributions set forth in ¶7. The interest has been calculated in accordance with the fluctuating IRS interest rate, as provided at section 10 of the Plan.

9.    Section 10 of the Plan parallels the ERISA statute, 29 U.S.C. § 1132(g)(2), and requires the assessment of liquidated damages against Defendants in an amount equal to the greater of the following: the amount of interest owed on the delinquent principal, or twenty percent (20%) of the delinquent principal. As noted above, the total interest owed through December 15, 2007 is $892.87. Twenty percent (20%) of Defendants' unpaid contributions is $5,320.56. The total amount of liquidated damages is greater than the interest due. Therefore, Defendants owe liquidated damages in the amount of $5,320.56.

10.    The Pension Fund routinely audits employers to ensure all required contributions are being paid. It also audits employers in connection with delinquency collection lawsuits. An audit is the most accurate tool employed by the Pension Fund to ensure an employer's compliance

with its statutory obligations. In performing these audits, the auditor reviews the payroll records
of each employee who performs work of the type covered by the collective bargaining
agreement. These records will include time cards, payroll ledgers, payroll summaries, time slips,
or such other payroll records as the employer maintains which will indicate the number of hours
that each individual employee worked and was paid for each week. The information gathered
from these records is then compared to the wage information found on the employer's federal,
state and municipal tax returns and on the W-2 statements provided to the employees. The
auditor also reviews disbursement ledgers and check registers to identify potential wage
payments to employees not made through the payroll system. Job/project contracts are reviewed
to determine whether the work performed is within the scope of the collective bargaining
agreement. After compiling the information gathered from the above records, a schedule of the
contributions that should have been paid according to the contract is prepared. This schedule,
which is broken down by month, is then compared to the actual contributions which the
employer did submit to the Pension Fund, with any differences noted. Once completed, an audit
report is forwarded to the employer for its review and payment.

    11.   Despite continuing contractual obligations to do so, Defendants have repeatedly
failed to submit timely remittance reports and pension contributions. The Pension Fund and its
Trustees are required to pay benefits to all properly eligible employees of contributing
employers. Employees of contributing employers continue to accrue pension credits, based on
the hours of their employment, regardless of whether their employers make pension
contributions on their behalf for these hours, as contractually required. The Pension Fund's
obligation to recognize pension credits and to pay pensions to vested employees is absolute and
continues even if the employers fail to pay their required pension contributions. Employer

contributions <u>and</u> the earnings the Pension Fund receives by investing these contributions comprise the assets from which the Pension Fund pays retirement benefits to participants and their dependents and beneficiaries. When employers, like Defendants, fail to pay their contributions or do not pay them timely, the Pension Fund is deprived of the investment income they otherwise could have earned. In addition, the Pension Fund also must engage in time-consuming and costly efforts to collect the unpaid contributions. These efforts include letters and phone calls to the employer, investigating other sources for collection and attempting to calculate delinquency amounts and benefit eligibility through other sources (e.g. paystubs), if available. Further, the Pension Fund has to process benefit eligibility and benefit claims manually so that participants (and their dependents) employed by the delinquent employer are not deprived of retirement benefits. The actual losses and added costs (in terms of dollar amount, capital and manpower) incurred by the Pension Fund in connection with an employer contribution delinquency are not capable of precise determination, but they are substantial. Defendants' refusal to contribute as it is bound means irreparable harm and injury to the Pension Fund – an obligation to make benefit payments to employees without necessary contributions from Defendants to cover those benefits. Therefore, Defendants should be required to submit timely current contributions and remittance reports in the future.

12.   I have executed this Declaration in support of Plaintiff's Motion for Default

Judgment against Defendants and request that this Court consider the same as proof in support of

the allegations contained in the Plaintiff's Complaint and other facts stated in this Declaration.

>                               Pursuant to 28 U.S.C. §1746, I declare under
>                               Penalty of perjury that the foregoing is true
>                               and correct.

Executed on:    12|11|07                    _____
                                            THOMAS MONTEMORE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff | ) | CIVIL ACTION NO. 07-1508 (JDB) |
| v. | ) ) | |
| LENA CONTRACTING, INC., *et al* | ) ) | |
| Defendants | ) | |

## DECLARATION OF PHILIP A. LOZANO, ESQUIRE

PHILIP A. LOZANO states:

1.      I am an associate with the law firm of Jennings Sigmond, P.C. with responsibility for the case captioned International Painters and Allied Trades Industry Pension Fund v. Lena Contracting, Inc., et al., Civil Action No. 07-1508 (JDB).  I submit this declaration to support an award of attorney fees to Plaintiff.

Case Fees

2.      Attached as Exhibit 3 to Plaintiff's Motion for Entry of Judgment by Default is a list showing all work performed by the office of Jennings Sigmond, P.C. and related costs in connection with in this action through December 11, 2007.  The listing was prepared from contemporaneous attorney time and expenses records and bills, the originals of which are maintained in the regular business records of Jennings Sigmond. Each piece of work is separately coded and the work performed is described.  The fees and expenses relevant to this case are $5,757.20.

3.      The identity of those performing services related to this matter and normal hourly rates are as follows.

191308.1

EXHIBIT

| INITIALS | NAME | TITLE | HOURLY RATE |
|----------|------|-------|-------------|
| PL | Philip A. Lozano | Associate | $220.00 |
| SMC | Shanna M. Cramer | Associate | $220.00 |

4.    Plaintiffs only seek judgment for fees in the bills, which reflect a special fee schedule with the International Painters and Allied Trades Industry Pension Fund for a uniform $220.00 per hour rate for all lawyers and $70.00 per hour for paralegals and clerks.

Attorney Background and Experience

5.    Philip A. Lozano.  Philip A. Lozano, an associate in the firm, received his undergraduate degree from Franciscan University in 1996 and his law degree from the Beasley School of Law, Temple University in 2006.  Prior to practicing law, he worked for three (3) years as a pension analyst for the IBM Corporation and five (5) years as a pension consultant for Mercer Human Resources Consulting and Duane Morris LLP.

6.    Shanna M. Cramer.  Shanna M. Cramer, an associate in the firm, has actively practiced law for three (3) years. She graduated in 1997 from Rutgers University, with honors, with a Bachelors Degree in History, Political Science and Spanish.  She received her law degree in 2001 from Rutgers Law School. Ms. Cramer graduated in 2004 from Beasley School of Law-Temple University, with an LL.M in Taxation. Ms. Cramer has been admitted to the Bars of Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania.

Legal Market Benchmark

7.    The time and fees charged in this case are reasonable based on prevailing market rates for similar services by lawyers of reasonably comparable skill, experience and reputation in both the Philadelphia and District of Columbia markets.

8.      My opinion that the time and fees are reasonable is based on a number of factors, including the following.

(a)      We serve as counsel or co-counsel to over 20 multiemployer employee benefit funds groups.  The firm currently has 17 lawyers, with a dedicated benefits department of seven (7) lawyers plus part-time work by three (3) other lawyers in the labor practice.  The work is specialized and our competition often is large corporate firms with both employee benefits and federal litigation experience.  In my experience, our fees are normally substantially lower than the charges of larger firms.

(b)      The flat rate in this case is consistent with market rates in published surveys by Altman Weil, a leading law firm consultant.  Specifically, Altman Weil found a median hourly rate in 2005 of $195 for associates in the Middle Atlantic region (encompassing both Philadelphia and the District of Columbia) and a range up to $273 per hour at the 90th percentile.  See Associate Hourly Billing Rates (March 10, 2006), reprinted from http://www.altmanweil.com/PracticeSpecialtiesRates/ and attached hereto as Exhibit 4.  The median rate for partners (shareholders) in employee benefits litigation was $305 per hour, *id.*, Practice Specialties and Hourly Rates (October 1, 2005).  A $200 rate in 2006 is only a 2.56% increase over the 2005 median for associates only.

(c)      The fees are consistent with market ranges in a 2004 Ohio bar association survey, downloads.ohiobar.org/conventions/convention2005/session508%20Economics%20of%20Law. pdf, attached as Exhibit 5, especially pages 26 and exhibit 27, especially after giving weight to increases from 2004 to 2006 (roughly 5% per year on average in the Ohio survey) and regional differences reflected in Altman Weil data (Ex. 4), showing an 8.33% higher rate in median associates' rates in the Middle Atlantic region ($195) over the East North Central region

covering Ohio ($180)). The Ohio survey showed median hourly associate rates in the comparable downtown Cleveland, Cincinnati and Columbus areas of $200 - $235 per hour, ranging up to $ $334 - $359 at the 90[th] percentile. See, Exhibit 5 (excerpt page 26). It also shows that a $70 per hour paralegal rate is less than the median rate for 5 years experience in Ohio, without adjustment for regional differences, Exhibit 5 (Ex. 27).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Signed on: <u>December 11, 2007</u>

_____

PHILIP A. LOZANO, ESQUIRE
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0669
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

INTERNATIONAL PAINTERS AND ALLIED )
TRADES INDUSTRY PENSION FUND )
                             )
                Plaintiff )        CIVIL ACTION NO. 07-1508 (JDB)
    v. )
                             )
LENA CONTRACTING, INC., *et al* )
                             )
               Defendants )

**JENNINGS SIGMOND ATTORNEYS' FEES – DECEMBER 2007**

| Date | Attorney | Task | Time |
|------|----------|------|------|
| 12/4/07 | PL | Phone Conference with M. Realmuto re: Missing Reports; Review of File regarding same; Preparation of Documents Related to Motion for Default Judgment. | 2.0 |
| 12/10/07 | PL | Preparation of Documents Related to Motion for Default Judgment. | 2.7 |
| 12/11/07 | PL | Preparation of Documents Related to Motion for Default Judgment. | 2.3 |
| 12/12/07 | PL | Review and Revise Motion for Default Judgment. | 0.7 |
| | | **TOTAL:** | **7.7** |

PL – 7.7 Hours @ $220.00/Hour      =     $1,694.00

191308.1

EXHIBIT
3

Fees - December 2007 Total                         =      $1,694.00

Fees - August 2007 through November 2007           =      $3,300.00

Expenses                                           =      $  763.20


**GRAND TOTAL FEES AND COSTS**                     =      $5,757.20

# Jennings Sigmond, P.C.
## Time And Expense Details

Report ID:  OT2025 - 14752
Tuesday, December 04, 2007

Printed By  MHT
Page  1

| Client | Client Reporting Name | Matter | Matter Reporting Name | Billing Timekeeper |
|---|---|---|---|---|
| PTINTF | IUPAT Industry Pension Fund | 29215 | Lena Contracting, Inc. | Sigmond, Richard B. |

Beginning To End

### Unbilled Time

| Date | Timekeeper | Hours Worked | Hours To Bill | Rate | Amount Task | Activity | Narrative |
|---|---|---|---|---|---|---|---|
| 11/2/2007 | PL | 0.20 | 0.20 | 220.00 | $44.00 | | Phone Conference M. Realmuto regarding Missing Reports |
| 11/5/2007 | PL | 0.60 | 0.60 | 220.00 | $132.00 | | Review of Reports Submitted by Defense |
| 11/6/2007 | PL | 1.80 | 1.80 | 220.00 | $396.00 | | Preparation of Correspondence with P. Gilbert regarding the same |
| | | | | | | | Preparation of 55 (a) and Related Documents |
| | | | | | | | Phone Conference with M. Remuto |
| | | | | | | | Preparation of Correspondence with T. Montemore and P. Gilbert regarding |
| | | | | | | | Delinquency |
| 11/16/2007 | PL | 0.20 | 0.20 | 220.00 | $44.00 | | Review of ECF Notices (x3) |
| 11/29/2007 | PL | 0.10 | 0.10 | 220.00 | $22.00 | | Office Conference with T. Montemore regarding Status |
| 11/29/2007 | PL | 1.80 | 1.80 | 220.00 | $396.00 | | Preparation of Documents related to Motion for Default Judgment |

Unbilled Time Totals   4.70   4.70   $1,034.00

### Unbilled Expenses

| Date | | | Amount | Exp Code | Narrative |
|---|---|---|---|---|---|
| 11/6/2007 | | | $1.05 | COPY | Photocopies |
| 11/7/2007 | | | $0.84 | COPY | Photocopies |
| 11/8/2007 | | | $190.00 | 7100 | Service Fee |

Unbilled Expenses Totals   $191.89

### Billed Time

| Date | Timekeeper | Hours Worked | Hours On Bill | Rate | Amount Task | Activity | Narrative |
|---|---|---|---|---|---|---|---|
| 8/7/2007 | SMC | 0.10 | 0.10 | 220.00 | $22.00 | | Review of Documents |
| 8/9/2007 | SMC | 0.40 | 0.40 | 220.00 | $88.00 | | Review of Documents |
| | | | | | | | Open File |
| 8/13/2007 | PL | 1.20 | 1.20 | 220.00 | $264.00 | | Investigate Corporate Status |
| | | | | | | | Review of Documents Related to Initiation of Complaint |
| | | | | | | | Dunn & Bradstreet |
| 8/14/2007 | PL | 2.00 | 2.00 | 220.00 | $440.00 | | Review of Documents Related to Filing Complaint |
| | | | | | | | Investigate Corporate Status |
| | | | | | | | Dunn & Bradstreet Report |
| | | | | | | | Preparation of Complaint |
| 8/14/2007 | SMC | 0.80 | 0.80 | 220.00 | $176.00 | | Review of Documents |
| | | | | | | | Conference with Attorney P. Lozano regarding Alter Ego Complaint |
| | | | | | | | Legal Research |
| | | | | | | | Review D & B Business Reports |

0461

Report ID:   OT2025 - 14752
Tuesday, December 04, 2007

# Jennings Sigmond, P.C.
## Time And Expense Details

Beginning To End

### Billed Time

| Date | Timekeeper | Hours Worked | Hours On Bill | Rate | Amount Task | Activity | Narrative |
|---|---|---|---|---|---|---|---|
| 8/16/2007 | SMC | 0.10 | 0.10 | 220.00 | $22.00 | | Review and Revision of Complaint |
| 8/17/2007 | PL | 1.20 | 1.20 | 220.00 | $264.00 | | Review and Revision of Complaint to Include Alter-Ego Companies |
| 10/2/2007 | PL | 0.30 | 0.30 | 220.00 | $66.00 | | Review of Return of Service |
| 10/3/2007 | PL | 1.60 | 1.60 | 220.00 | $352.00 | | Memo to File Regarding Same |
| | | | | | | | Preparation of 55(a) Motion for Entry of Default |
| | | | | | | | Phone Conference with Defendant Regarding Same |
| | | | | | | | Review of File |
| 10/3/2007 | SMC | 0.40 | 0.40 | 220.00 | $88.00 | | Office Conference with Attorney S. Cramer Regarding Same |
| | | | | | | | Phone Conference with R. M. Realmuto |
| | | | | | | | Review of Docket |
| 10/8/2007 | PL | 0.40 | 0.40 | 220.00 | $88.00 | | Conference with Attorney P. Lozano |
| 10/11/2007 | PL | 0.40 | 0.40 | 220.00 | $88.00 | | Phone Conference with M. Realmuto Regarding Settlement |
| 10/15/2007 | PL | 0.40 | 0.40 | 220.00 | $88.00 | | Correspondence Exchange with Funds Regarding Settlement Offer |
| | | | | | | | Request for Update from P. Gilbert |
| 10/16/2007 | PL | 0.40 | 0.40 | 220.00 | $88.00 | | Phone Conference with T. Montemore Regarding Settlement Terms |
| 10/29/2007 | PL | 0.40 | 0.40 | 220.00 | $88.00 | | Phone Conference with Defendant Regarding Same |
| 10/31/2007 | PL | 0.20 | 0.20 | 220.00 | $44.00 | | Phone Conference with M. Realmuto Regarding Missing Reports |
| | | | | | | | Phone Conference with Defendant Regarding Missing Reports |
| | | | | | | | Phone Conference with M. Realmuto Regarding Reports |

| | Totals | 10.30 | 10.30 | | $2,266.00 | | |

### Billed Expenses

| Date | Amount | Exp Code | Narrative |
|---|---|---|---|
| 8/1/2007 | $15.59 | PO | Postage Charges |
| 8/15/2007 | $350.00 | 7100 | Filing Fee |
| 8/25/2007 | $13.53 | SD | Special Delivery |
| 8/30/2007 | $21.63 | COPY | Photocopies |
| 8/30/2007 | $21.14 | COPY | Photocopies |
| 8/30/2007 | $9.66 | COPY | Photocopies |
| 8/30/2007 | $10.57 | COPY | Photocopies |
| 10/3/2007 | $24.99 | COPY | Photocopies |
| 10/4/2007 | $104.20 | 7100 | Service Fee |

| Billed Expenses Totals | $571.31 | | |

0462

Report ID:  OT2025 - 14752
Tuesday, December 04, 2007

# Jennings Sigmond, P.C.
## Time And Expense Details

Beginning To End

| | Hours Worked | Hours To Bill | Fee Amount | Expense Amount | Total Amount |
|---|---|---|---|---|---|
| Report Totals | 15.00 | 15.00 | $3,300.00 | $763.20 | $4,063.20 |

*** End Of Report ***

Printed By  MHT
Page        3

# Associate Hourly Billing Rates by Region



Legend:
- ☐ Median
- ■ 90th Percentile

| Region | Median | 90th Percentile |
|---|---|---|
| New England | $185 | $250 |
| Middle Atlantic | $195 | $273 |
| South Atlantic | $190 | $270 |
| E. So. Central | $170 | $220 |
| W. So. Central | $175 | $240 |
| E. No. Central | $180 | $275 |
| W. No. Central | $145 | $190 |
| Mountain | $175 | $250 |
| Pacific | $195 | $290 |

Source: Altman Weil Survey of Law Firm Economics
2005 Edition

See following page for states included
in each region.



EXHIBIT
4



Census Regions and Divisions of the United States





# Median Hourly Billing Rates
## Litigation Specialties

Top Five Hourly Rates

Equity and Non-Equity Partners

| | Antitrust | IP | Tax | Employee Benefits | Criminal |
|---|---|---|---|---|---|
| Median | $380 | $330 | $325 | $305 | $305 |

Source: Altman Weil Survey of Law Firm Economics 2005 Edition



## OSBA

# THE 2004 ECONOMICS OF LAW PRACTICE IN OHIO SURVEY

### Introduction

During the spring of 2004, the Ohio State Bar Association, Section on Solo, Small Firms and General Practice (OSBA) surveyed the Ohio legal community on the economics of law practice. Two online surveys were utilized, replacing the single mail-based survey instrument provided in past years.

With respect to the economics of law practice, similar studies were undertaken in 2001, 1998, 1994 and 1990. The objectives of these studies were to determine, among other things:

- current demographics of practicing attorneys;

- attorney net income by practice category, gender, field of law, office location, work status, years in practice and firm size;

- associate, legal assistant, and secretary compensation by years of experience and office location;

- prevailing average hourly billing rates for attorneys by a variety of indicators, and rates for legal assistants by years of experience, firm size and office location;

- attorney time allocated to billable and non-billable professional activities; and

- overhead expenses associated with maintaining a private practice by office location and firm size.

Attorneys can compare themselves and their firms against "norms" established by the aggregation of survey data. Time series information is also provided to denote trends. Norms include statistics that are organized by combinations of office location, firm size, gender, work status (full-time vs. part-time), practice class, area of legal concentration and years of practice.

The above information has been consolidated into this reference to help guide attorneys as they plan and manage their professional lives.

For 2004, a survey dedicated to law office technology and marketing issues was also fielded at the same time as the economics survey. Findings from this survey are summarized as Current Issues on Law Office Technology and Marketing in Ohio, 2004 and are available at www.ohiobar.org

© 2004 Ohio State Bar Association. All rights reserved.                                      1

EXHIBIT

5

IV.    **BILLING RATES AND PRACTICES**

    A.    Takeaways.

        1.    The median hourly billing rate for all attorneys was *$175* for 2004 and *$110* for 1994. The average annual rate of increase in hourly billing rates during this time period was *5.9%*.

        2.    Rates have increased the most in *suburban Cincinnati* (7.3% per year) and least in *suburban Columbus* (2.5%).

        3.    Rates increased most for *partners in firms with 8+ partners* (5.9%) and least for *partners in firms with two to seven partners* (3.7%).

        4.    *Rates increased the most for respondents in* firms with two to five attorneys (6.05%) and least for respondents in *firms with more than 20 attorneys* (4.2%).

        5.    Rates increased the most for *estate planning attorneys* (9.5%) and *tax attorneys* (7.6%) and least for *bankruptcy* (2%) and *municipal/public entity* attorneys (- 1%).

        6.    Fifty-six percent of respondents had *not changed* their rates in one year or more.

        7.    When rates are raised, the prevalent increase is *6-10%* (41% of respondents).

        8.    *Uncollectibles* (greater than 2% of fees billed) are increasing. The prevalent range is *3-8% of fees billed* (33% in 2004 and 30% in 2000).

        9.    Attorneys are *increasingly adding service charges* to delinquent accounts where applicable (30% in 2004 compared with 20% in 1990).

    B.    Implications.

        1.    There is still pricing power for legal services despite intense competition and an ever growing supply of attorneys.

        2.    Existing and new practice management benchmarks should be available, especially for solos and small firm practicing attorneys, to enable relative standing self assessments.

V.    **ATTORNEY TIME ALLOCATIONS**

    A.    Takeaways.

        1.    The median value for *total hours* worked in 2004 rose to *50* from *48* in 1990 (2500 hours per year on a 50-week year).

**Law Firm Billing Rates and Billing Practices**

## 2004 Attorney Hourly Billing Rates

The reported 2004 median hourly billing rate is $200. The average is $206. While several interacting factors affect the setting and application of hourly billing rates, Exhibit 21 includes three discrete factors: respondents' firm size, years in practice and office location, while Exhibit 22 identifies respondents' primary source of income, and practice category.

**Exhibit 21** **2004 HOURLY BILLING RATES BY FIRM SIZE, YEARS IN PRACTICE AND OFFICE LOCATION**

| | | | Value by Percentile | | |
|---|---|---|---|---|---|
| Size of Firm | N | Mean | 25th | Median | 75th | 95th |
| 1 | 196 | $155 | $125 | $150 | $175 | $225 |
| 2 | 55 | 164 | 125 | 150 | 185 | 250 |
| 3-6 | 77 | 176 | 150 | 175 | 200 | 256 |
| 7-10 | 40 | 196 | 150 | 180 | 244 | 300 |
| 11-20 | 39 | 189 | 155 | 195 | 225 | 275 |
| 21-50 | 49 | 206 | 163 | 200 | 238 | 320 |
| 51+ | 72 | 249 | 186 | 240 | 300 | 377 |
| **Yrs. in Practice** | | | | | | |
| 5 or less | 70 | $147 | $125 | $143 | $175 | $222 |
| 6-10 | 78 | 164 | 125 | 150 | 190 | 250 |
| 11-15 | 65 | 185 | 150 | 180 | 228 | 296 |
| 16-25 | 131 | 184 | 150 | 165 | 220 | 306 |
| More than 25 | 183 | 200 | 150 | 190 | 230 | 340 |
| **Office Location** | | | | | | |
| Greater Cleveland | 121 | $200 | $150 | $185 | $238 | $350 |
| Greater Cincinnati | 61 | 199 | 150 | 180 | 245 | 325 |
| Greater Columbus | 120 | 194 | 150 | 180 | 233 | 300 |
| Greater Dayton | 25 | 179 | 150 | 175 | 193 | 296 |
| Northeast Region | 98 | 165 | 125 | 163 | 196 | 250 |
| Northwest Region | 47 | 152 | 120 | 150 | 175 | 263 |
| Southern Region | 56 | 155 | 125 | 150 | 175 | 250 |
| Downtown Cleveland | 61 | $237 | $183 | $235 | $283 | $359 |
| Suburban Cleveland | 60 | 161 | 150 | 150 | 189 | 220 |
| Downtown Cincinnati | 40 | 213 | 153 | 200 | 271 | 368 |
| Suburban Cincinnati | 21 | 173 | 145 | 175 | 183 | 249 |
| Downtown Columbus | 67 | 217 | 165 | 210 | 260 | 334 |
| Suburban Columbus | 53 | 164 | 145 | 150 | 200 | 243 |
| Dayton | 25 | 179 | 150 | 175 | 193 | 296 |
| Canton | 12 | 154 | 116 | 153 | 183 | 250 |
| Akron | 41 | 186 | 150 | 190 | 223 | 273 |
| Toledo | 26 | 170 | 144 | 168 | 186 | 285 |
| Youngstown | 9 | 146 | 113 | 150 | 178 | 200 |
| Northeast Ohio | 36 | 149 | 125 | 138 | 188 | 225 |
| Northwest Ohio | 21 | 129 | 100 | 125 | 150 | 180 |
| Southeast Ohio | 16 | 155 | 125 | 150 | 188 | 250 |
| Southwest Ohio | 25 | 146 | 125 | 150 | 170 | 207 |
| Central Ohio | 15 | 171 | 150 | 165 | 185 | 250 |
| **All Attorneys** | 530 | $182 | $150 | $175 | $210 | $300 |

| Exhibit 22 | 2004 HOURLY BILLING RATES BY PRIMARY FIELD OF LAW AND PRACTICE CLASS |
|---|---|

| Primary Field of Law | N | Mean | Value by Percentile | | |
|---|---|---|---|---|---|
| | | | 25th | Median | 75th | 95th |
| Administrative Law | 5 | $241 | $188 | $260 | $285 | $295 |
| Bankruptcy, Debtor | 18 | 135 | 115 | 150 | 168 | 190 |
| Collections | 10 | 146 | 119 | 135 | 164 | 250 |
| Corporate/Business Law | 48 | 201 | 150 | 183 | 225 | 340 |
| Criminal (Public Defendant) | 9 | 139 | 100 | 125 | 175 | 225 |
| Criminal (Private Defendant) | 12 | 154 | 125 | 150 | 173 | 250 |
| Domestic Relations/Family Law | 55 | 173 | 125 | 150 | 200 | 280 |
| Environmental Law/Natural Resources Law | 6 | 200 | 151 | 168 | 283 | 305 |
| General Practice | 14 | 136 | 118 | 132 | 161 | 185 |
| Health & Hospital Law | 6 | 203 | 148 | 195 | 263 | 300 |
| Intellectual Property | 10 | 216 | 174 | 223 | 250 | 300 |
| Labor Law (Management) | 6 | 185 | 150 | 168 | 236 | 255 |
| Employment Law (Management) | 25 | 187 | 138 | 175 | 238 | 324 |
| Employment Law (Labor) | 6 | 178 | 151 | 175 | 208 | 230 |
| Municipal/Public Entity Law | 8 | 164 | 111 | 138 | 225 | 305 |
| Product Liability | 5 | 226 | 138 | 205 | 325 | 425 |
| Personal Injury (Defendant) | 25 | 148 | 110 | 135 | 175 | 270 |
| Personal Injury (Plaintiff) | 43 | 179 | 150 | 160 | 200 | 300 |
| Professional Liability | 6 | 164 | 149 | 165 | 178 | 185 |
| Real Property Law | 26 | 164 | 125 | 150 | 195 | 315 |
| Taxation | 7 | 231 | 175 | 220 | 295 | 300 |
| Trial Practice, not PI (General Civil) | 20 | 190 | 140 | 177 | 200 | 415 |
| Trial Practice, not PI (Commercial) | 20 | 224 | 181 | 210 | 276 | 387 |
| Estate Planning/Wealth Management | 36 | 209 | 175 | 205 | 233 | 308 |
| Probate, Decedents' Estates | 49 | 176 | 150 | 175 | 200 | 250 |
| Workers' Compensation (Plaintiff) | 6 | 167 | 125 | 150 | 213 | 250 |
| Other | 23 | 200 | 150 | 190 | 250 | 358 |
| **Practice Classification** | | | | | | |
| Sole Practitioner | 168 | $153 | $125 | $150 | $175 | $225 |
| Solo with 1+ associates | 42 | 181 | 150 | 175 | 203 | 259 |
| Space Sharer | 21 | 160 | 125 | 150 | 175 | 275 |
| Partner in Firm with 2-7 Partners | 114 | 184 | 150 | 175 | 221 | 300 |
| Partner in Firm with 8+ Partners | 88 | 249 | 196 | 240 | 300 | 381 |
| Associate in Firm with 2-7 Partners | 31 | 156 | 125 | 150 | 175 | 264 |
| Associate in Firm with 8+ Partners | 56 | 180 | 150 | 175 | 210 | 263 |
| All Attorneys | 530 | $182 | $150 | $175 | $210 | $300 |

## Hourly Billing Rates for Associates and Legal Assistants

The distribution of hourly billing rates for associates and legal assistants are summarized by years of experience in Exhibit 23, by office location (Exhibits 24 and 25), and by firm size (Exhibits 26 and 27).

Exhibit 26    **DISTRIBUTIONS OF 2004 HOURLY BILLING RATES FOR ASSOCIATES BY FIRM SIZE AND YEARS OF EXPERIENCE**

| Associate Billing Rate Category | Firm Size (Number of Attorneys) | | | | |
| --- | --- | --- | --- | --- | --- |
| | 2 | 3-6 | 7-20 | 21+ | All |
| **No Experience** | | | | | |
| <$135 | 57.9 | 78.1 | 69.0 | 43.5 | 61.9 |
| $136-145 | 15.8 | 9.4 | 10.3 | 19.6 | 13.5 |
| $146-155 | 15.8 | 9.4 | 17.2 | 19.6 | 16.1 |
| $156-165 | | | 1.7 | 6.5 | 2.6 |
| $166-175 | 10.5 | | 1.7 | 4.3 | 3.2 |
| $176-199 | | | | 6.5 | 1.9 |
| $225-249 | | 3.1 | | | 0.6 |
| Total | 100% | 100% | 100% | 100% | 100% |
| **3 Years Experience** | | | | | |
| <$135 | 43.8 | 35.3 | 39.0 | 13.0 | 31.0 |
| $136-145 | 18.8 | 20.6 | 22.0 | 19.6 | 20.6 |
| $146-155 | 25.0 | 29.4 | 20.3 | 21.7 | 23.2 |
| $156-165 | | 11.8 | 6.8 | 13.0 | 9.0 |
| $166-175 | 6.3 | 2.9 | 6.8 | 23.9 | 11.0 |
| $176-199 | 6.3 | | 5.1 | 8.7 | 5.2 |
| Total | 100% | 100% | 100% | 100% | 100% |
| **5 Years Experience** | | | | | |
| <$135 | 12.5 | 24.0 | 25.0 | 4.3 | 16.9 |
| $136-145 | 25.0 | 8.0 | 10.7 | 10.6 | 11.0 |
| $146-155 | 12.5 | 40.0 | 25.0 | 10.6 | 22.1 |
| $156-165 | 12.5 | 12.0 | 17.9 | 17.0 | 16.2 |
| $166-175 | | 16.0 | 10.7 | 10.6 | 11.0 |
| $176-199 | 12.5 | | 10.7 | 29.8 | 15.4 |
| $200-224 | 25.0 | | | 14.9 | 6.6 |
| $225-249 | | | | 2.1 | 0.7 |
| Total | 100% | 100% | 100% | 100% | 100% |
| **10 Years Experience** | | | | | |
| <$135 | 33.3 | 14.8 | 19.5 | 5.4 | 14.9 |
| $136-145 | 11.1 | | 4.9 | 2.7 | 3.5 |
| $146-155 | | 22.2 | 14.6 | 5.4 | 12.3 |
| $156-165 | 22.2 | 7.4 | 4.9 | 5.4 | 7.0 |
| $166-175 | | 14.8 | 14.6 | 16.2 | 14.0 |
| $176-199 | | 18.5 | 26.8 | 18.9 | 20.2 |
| $200-224 | 22.2 | 18.5 | 14.6 | 18.9 | 17.5 |
| $225-249 | 11.1 | 3.7 | | 10.8 | 5.3 |
| $250+ | | | | 16.2 | 5.3 |
| Total | 100% | 100% | 100% | 100% | 100% |

Exhibit 27  **DISTRIBUTIONS OF 2004 HOURLY BILLING RATES FOR LEGAL ASSISTANTS BY FIRM SIZE AND EXPERIENCE**

| Legal Assistant Billing Rate Category | 2 | 3-6 | 7-20 | 21+ | All Firms |
|---|---|---|---|---|---|
| **No Experience** | | | | | |
| $50 or less | 40.0 | 60.0 | 50.0 | 20.0 | 41.0 |
| $51-60 | 30.0 | 20.0 | 20.0 | 17.1 | 20.0 |
| $61-70 | 10.0 | 4.0 | 10.0 | 5.7 | 7.0 |
| $71-80 | 20.0 | 8.0 | 10.0 | 25.7 | 18.0 |
| $81-90 | | 4.0 | 10.0 | 8.6 | 7.0 |
| $91-100 | | 4.0 | | 17.1 | 7.0 |
| $101-110 | | | | 5.7 | 2.0 |
| Total | 100% | 100% | 100% | 100% | 100% |
| **3 Years Experience** | | | | | |
| $50 or less | 12.5 | 25.0 | 13.3 | 2.8 | 11.7 |
| $51-60 | 62.5 | 35.0 | 23.3 | 11.1 | 24.5 |
| $61-70 | | 20.0 | 26.7 | 22.2 | 21.3 |
| $71-80 | | 10.0 | 13.3 | 11.1 | 10.6 |
| $81-90 | 12.5 | 5.0 | 10.0 | 22.2 | 13.8 |
| $91-100 | 12.5 | | 10.0 | 8.3 | 7.4 |
| $101-110 | | 5.0 | 3.3 | 8.3 | 5.3 |
| $111-120 | | | | 11.1 | 4.3 |
| >$120 | | | | 2.8 | 1.1 |
| Total | 100% | 100% | 100% | 100% | 100% |
| **5 Years Experience** | | | | | |
| $50 or less | 16.7 | 4.5 | 8.6 | 2.9 | 6.2 |
| $51-60 | | 27.3 | 17.1 | 5.9 | 14.4 |
| $61-70 | 66.7 | 22.7 | 11.4 | 14.7 | 18.6 |
| $71-80 | 16.7 | 31.8 | 34.3 | 11.8 | 24.7 |
| $81-90 | | 4.5 | 14.3 | 11.8 | 10.3 |
| $91-100 | | | 11.4 | 17.6 | 10.3 |
| $101-110 | | 9.1 | | 11.8 | 6.2 |
| $111-120 | | | | 11.8 | 4.1 |
| >$120 | | | 2.9 | 11.8 | 5.2 |
| Total | 100% | 100% | 100% | 100% | 100% |
| **10 Years Experience** | | | | | |
| $50 or less | 20.0 | | 2.7 | 3.0 | 3.9 |
| $51-60 | 20.0 | 9.1 | 18.9 | 3.0 | 11.8 |
| $61-70 | | 13.6 | 13.5 | 12.1 | 11.8 |
| $71-80 | 30.0 | 40.9 | 18.9 | 6.1 | 20.6 |
| $81-90 | 10.0 | 18.2 | 21.6 | 6.1 | 14.7 |
| $91-100 | | 13.6 | 16.2 | 18.2 | 14.7 |
| $101-110 | | 4.5 | | 12.1 | 4.9 |
| $111-120 | 20.0 | | 5.4 | 18.2 | 9.8 |
| >$120 | | | 2.7 | 21.2 | 7.8 |
| Total | 100% | 100% | 100% | 100% | 100% |

Exhibit 28 displays the impact of firm size on methods for client billing for legal assistants:

Exhibit 28  **LEGAL ASSISTANT CLIENT BILLING METHODS BY SIZE OF FIRM, 2004**

| Billing Method for Legal Assistants | 1 | 2 | 3-6 | 7-20 | 21+ | All Firms |
|---|---|---|---|---|---|---|
| Included with Attorney Fee | 47.1 | 59.5 | 39.7 | 19.7 | 4.7 | 32.1 |
| Time | 42.9 | 35.1 | 55.2 | 73.8 | 87.5 | 60.7 |
| Fee Schedule | 8.6 | 5.4 | 5.2 | 3.3 | 6.3 | 5.9 |
| Total | 100% | 100% | 100% | 100% | 100% | 100% |